# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN T. STEELE, as co-beneficiary under the Will of Margaret R. Steele, | : : : : : : : : : : : : | No. 1:11-cv-1124 |
| | | Hon. John E. Jones III |
| Plaintiff, | | |
| v. | | |
| FIRST NATIONAL BANK OF MIFFLINTOWN, | | |
| Defendants. | | |

## **MEMORANDUM**

## **August 8, 2013**

Pending before the Court is the motion for judgment on the pleadings or in the alternative for reconsideration *nunc pro tun* (doc. 116) of Defendant First National Bank of Mifflintown. The motion has been fully briefed and is ripe for our review. For the reasons that follow, we will grant the motion in its entirety.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff John Steele ("Plaintiff") is a Vermont resident and the co-executor of the estate of decedent Margaret Steele ("Decedent"). (Doc. 1, ¶ 1). The Plaintiff is a co-beneficiary under the Decedent's last will and testament; he is also named as co-trustee, together with Amy Steele Miller, of the Decedent's Amended Trust. (*Id.* ¶¶ 2-4). Defendant First National Bank of Mifflintown ("First National") is a

wholly-owned subsidiary of First Community Financial Corporation, a corporation organized under the laws of Pennsylvania with a principal place of business in Mifflintown, Pennsylvania. (*Id.* ¶ 5). Elyse Rogers ("Rogers") is an attorney residing and duly licensed in the Commonwealth of Pennsylvania. (*Id.* ¶ 6).

On or about May 7, 2008, the Decedent signed a durable power of attorney appointing First National as her agent and attorney-in-fact. (*Id.* ¶ 11). The bank then appointed its vice president, Kimberly Benner, to act as power of attorney. (*Id.* ¶ 12). Rogers was thereafter retained by Benner to assist with the Decedent's estate planning. (*Id.* ¶ 13). On or about the same day, the Decedent executed her last will and testament designating her grandchildren, the Plaintiff and his sister, Amy Steele Miller ("Miller"), as equal co-heirs of her estate and appointing First National as sole executor and trustee under the testamentary trust established therein. (*Id.* ¶¶ 14-16). On or about January 27, 2010, the Decedent executed a codicil to the will, revoking the appointment of First National as executor and appointing her grandchildren as co-executors. (*Id.* ¶ 17).

On September 1, 2010, First National, exercising its power of attorney, executed a revocable deed of trust (the "September Trust") pursuant to 20 PA. CONS. STAT. § 5603(b) in order to "establish a trust for the active management and control of the trust property" during the Decedent's lifetime. (*Id.* ¶ 18). Plaintiff

and Miller were named co-trustees of the trust along with First National. (*Id.* ¶ 19). The trust was drafted by Rogers and provided that the appointment or removal of a trustee, as well as any amendments or modifications to the agreement, were to be made in writing. (*Id.* ¶ 20). On November 4, 2010, the Decedent retained two law firms, former third-party Defendants Kevin Brennan, Franklin Montgomery, and Vince & Brennan, P.C., (collectively, "Estate Attorneys") to further assist in her estate planning. (*Id.* ¶ 33). The following day, First National informed the Estate Attorneys that the Decedent had expressed a desire to have Rogers remain involved in the estate planning process. (*Id.* ¶ 34). On December 2, 2010, Rogers wrote to the Estate Attorneys via email that the Decedent's physician "is clearly of the opinion that Mrs. Steele is not impaired in her mental ability to effectively receive and evaluate information ... and is able to manage her financial resources." (*Id.* ¶ 48).

The Estate Attorneys drew up an amended trust agreement with the goal of conferring tax benefits on the Decedent's estate and her heirs. (*Id.* ¶ 35). An amended trust (the "December Trust") was developed to defer estate taxes by transferring the Decedent's investment portfolio of $28 million to a limited liability company, the Ross (2010) LLC, prior to the Decedent's death. (*Id.* ¶ 36). In addition to these tax benefits, the December Trust was designed to save the estate

approximately $900,000 to $1 million in banking fees which would be owed if the entire estate passed through probate. (*Id.* ¶ 38). The amended estate plan "required [First National] to transfer monies from [the Decedent's] accounts at the First National Bank of Mifflintown to fund the Ross (2010) LLC in order to realize the tax saving prior to [the Decedent's] death." (*Id.* ¶ 39).

On December 17, 2010 the Decedent, the Plaintiff, and Miller "knowingly executed" the December Trust. (*Id.* ¶ 36). Thereafter, First National Bank refused to fund the LLC. (*Id.* ¶ 44). The Decedent died two months later with her intended estate plan not yet implemented. The Plaintiff alleges that First National "willfully and recklessly and/or negligently failed and refused to fund the Ross (2010) LLC" and has attempted to justify its failure to do so by relying on Rogers' assertion that the Decedent was "incompetent when she signed the December Trust, despite [Rogers] written and oral acknowledgment of clear and unambiguous evidence in her possession to the contrary." (*Id.* ¶ 44-46). The Plaintiff alleges that the bank thus caused the estate and its heirs to sustain a loss of no less than $4 million in federal and Pennsylvania taxes. (*Id.* ¶ 47).

As we have previously noted, this matter has followed a tortuous procedural course. The Plaintiff initiated this action on June 13, 2011 by filing a Complaint against First National Bank and Rogers. (Doc. 2). The Plaintiff asserts claims

against these Defendants for tortious interference (Count I), breach of fiduciary duty (Count II), negligence (Count III), and gross negligence (Count IV), each arising out of the Defendants' involvement in the Decedent's estate planning. The Plaintiff brought these claims in his individual capacity, in his capacity as a co-beneficiary and co-executor of the Decedent's estate, and in his capacity as a co-trustee under a trust created by the Decedent's will.

Rogers and First National moved to dismiss the Complaint on July 19, 2011. Both Defendants raised jurisdictional issues under Federal Rule of Civil Procedure 12(b)(1) and substantive issues under Federal Rule of Civil Procedure 12(b)(6). We referred the motions to Magistrate Judge Mildred E. Methvin for a report and recommendation ("R&R"), and on May 14, 2012, Judge Methvin issued an R&R which recommended that the claims be dismissed for lack of jurisdiction pursuant to the probate exception to federal jurisdiction. Objections were filed, and on July 3, 2012, we issued a memorandum and order (doc. 49) which adopted in part and rejected in part the R&R, dismissing on standing grounds the claims brought by the Plaintiff as co-executor and co-trustee, but allowing the Plaintiff to proceed on the claims brought in his individual capacity and as a beneficiary of Decedent's estate. We further concluded that due to the nature of this case and the remedies sought, the probate exception to federal litigation does not bar suit in this Court. Neither

the Magistrate Judge nor this Court in reviewing her R&R addressed the Defendants' arguments on the merits of the Plaintiff's claims.[1]

After filing their respective answers, both First National and Rogers filed third-party complaints against Third-Party Defendants Brennan, Montgomery, and Vince & Brennan, P.C., (collectively, "Estate Attorneys") alleging that if either Rogers or First National is found liable to the Plaintiff, the Estate Attorneys are jointly and severally liable to First National and/or Rogers for contribution for their respective roles in creating and implementing the Decedent's botched estate plan. The Estate Attorneys timely filed Rule 12(b)(6) motions seeking dismissal of the third-party claims, and in ruling on those motions, we concluded that neither Defendant had set forth a factual basis to support their sweeping legal conclusions with regard to the alleged legal malpractice of the Estate Attorneys. We held that we could thus not adequately measure the merit of the Defendants' contribution claims and granted the Estate Attorneys' motions, dismissing both third-party complaints without prejudice.

Both Defendants then filed motions for leave to amend on February 5, 2013,

---

[1] Notably, in December of 2012, after our decision limiting the Plaintiff's claims in this litigation to those in his individual capacity, the Plaintiff commenced a lawsuit in the Court of Common Pleas of Cumberland County, Pennsylvania, stating claims against First National and Rogers in his capacity as co-executor of the Decedent's estate and co-trustee of the Amended Trust. Specifically, the Plaintiff asserts claims against First National and Rogers for breach of fiduciary duty, negligence, and gross negligence. (*See* Doc. 116-1).

together with their proposed amended pleadings, and the Estate Attorneys responded asserting that neither pleading stated a claim for which relief could be granted, arguing in part that the Defendants could not establish privity. On March 25, 2013, we issued a memorandum and order (doc. 112) which agreed with the Estate Attorneys' position. With reliance on *Guy v. Liederbach*, 459 A.2d 744 (Pa. Super. Ct. 1983), we held that because both Defendants were proceeding on a contribution theory—that is, that the Estate Attorneys were derivatively liable for the Plaintiff's injury—their failure to establish an attorney-client relationship between the Plaintiff and the Estate Attorneys was fatal to their derivative third-party claims for contribution.

In doing so, we recognized that it was error to implicitly reject the same merits-based privity arguments when raised by Rogers in her initial motion to dismiss the Plaintiff's Complaint. Thus, in fairness to Rogers, we granted her the opportunity to again avail herself of this argument by allowing her to file a *nunc pro tunc* motion for reconsideration of our July 3, 2012 memorandum. That motion was fully briefed, and on June 13, 2013, we issued a memorandum and order which granted Rogers' motion in its entirety, concluding after an analysis of *Guy* and its progeny that Plaintiff had failed to state legal malpractice and further concluding that the claim for tortious interference with an inheritance failed as a

7

matter of law. First National has now moved for judgment on the pleadings (doc. 116) raising many of the same arguments put forth by Rogers. First National's motion has now been fully briefed (docs. 118, 120, 123) and is ripe for our review.

## II. STANDARDS OF REVIEW[2]

First National presents the instantly pending motion as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, alternatively, one for reconsideration *nunc pro tunc* of this Court's July 3, 2012 Order (doc. 49), and thus we are tasked first to determine which standard of review should govern the instant motion. As First National notes, we previously acknowledged that our failure to address certain arguments raised by dismissed Defendant Elyse Rogers in her Rule 12 motion was in error and, to that end, we granted Defendant Rogers leave to file a motion for reconsideration *nunc pro tunc*. In the interest of fairness, because we have previously granted such leave to Defendant Rogers, and because

---

[2] The Plaintiff asserts that this Court is required to consider the pending motion as one for summary judgment, rather than a motion for judgment on the pleadings or for reconsideration of our earlier Rule 12(b)(6) ruling, because First National has made reference to the Plaintiff's civil action currently pending in state court. However, under Rule 12(b)(6), which provides the standard of review applicable to motions for judgment on the pleadings and motions to dismiss, the Court is permitted to consider, in addition to the allegations of the complaint, "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, *matters of public record*, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (emphasis added). The pendency of a civil proceeding in state court is a matter of public record and thus, to the extent our acknowledgment of that matter is relevant to resolution of the presently pending motion, reference to the same is not enough to submit this matter to a summary judgment standard of review.

the arguments underlying her motion were similar to those raised by First National in its pending motion, we will grant First National's request for leave to file a motion for reconsideration *nunc pro tunc* and construe the instant filing consistent with that determination.

### A. Motion for Reconsideration

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *See Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677-78 (3d Cir. 1999). Accordingly, a court may grant such a motion only in the limited circumstances where the movant can show: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the [initial] motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id*. Absent a change in law or fact or some showing that the court's prior decision is inconsistent with binding authority, mere disagreement with the district court's resolution of a legal issue does not warrant a motion for reconsideration. *Dodge v. Susquehanna Univ.*, 796 F. Supp. 829, 830 (M.D. Pa. June 2, 1992) (motion to reconsider not supported by "clear error of law" when party merely disagrees with the court's conclusion).

B. **Motion to Dismiss**

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving such a motion, a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a), in particular Rule 8(a)(2), which requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, in order "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual

allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). To satisfy this plausibility standard, the complaint must indicate that the defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 555 U.S. at 680. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III. DISCUSSION

In its motion for reconsideration, First National asserts, as it did previously, that the lack of any fiduciary or other duty between First National and the Plaintiff in his personal capacity as a beneficiary of the Decedent's estate is dispositive to his breach of fiduciary duty, negligence, and gross negligence claims, and further that his claim for tortious interference with an inheritance fails because the courts of the Commonwealth have not yet extended such claims to include interference with a trust. The Plaintiff offers cursory opposition to each argument. We will address each of these claims *seriatim*.

### A. Breach of Fiduciary Duty, Negligence, and Gross Negligence

In his Complaint, the Plaintiff asserts that First National owed a fiduciary duty to him because it was "legally and factually obligated to comply with the competent estate planning and the written and orally expressed wishes of their

client, [the Decedent], and Defendants willfully and recklessly failed to comply with the valid estate plan executed by [the Decedent] and willfully and recklessly failed to fund the Ross (2010) LLC." (Doc. 2, ¶ 63). With regard to his negligence and gross negligence claims, the Plaintiff asserts that the Defendants owed him a duty to "discharge their responsibilities to Plaintiff and to [the Decedent] with due diligent care and skill" and that such negligence "manifested a willful and reckless disregard for and indifference to their duties to Plaintiff." (Doc. 2, ¶¶ 66, 70-71).

The Plaintiff asserts that these claims are not based on his alleged status as a third-party beneficiary to a contract, but are instead based on "tort claims . . . for the harm caused to him as the beneficiary of his grandmother's estate through the Defendants' wrongful and negligent conduct." (Doc. 120, p. 6 ("This is not a suit for breach of contract, nor has it ever been one.")). Nonetheless, in his papers, the Plaintiff argues that the duties owed to him by First National are derivative of the relationship between First National and the Decedent, not the existence of any independent relationship between First National and the Plaintiff, suggesting at least some reliance on a contract-based third-party beneficiary theory.[3] Ultimately, whether or not the third party beneficiary question controls, the result is the same:

---

[3] Indeed, while the Plaintiff contends that his remaining claims are personal tort claims and not premised on his "status as a third-party beneficiary," he nonetheless argues that his tort claims are based on the harms he has suffered "as the beneficiary of his grandmother's estate" as a result of First National's breach of its duties to her. (Doc. 120, p. 3, 6).

13

the Plaintiff has failed to state any viable claim against First National, and his Complaint must thus be dismissed.

The Plaintiff explicitly denounces any reliance on a third-party beneficiary contractual claim against First National and instead asserts that his claims against the bank are premised on tort theories of negligence, gross negligence, and breach of a fiduciary duty. Each of these claims, while varying slightly, requires that the Plaintiff establish that First National had assumed and breached some duty to him, whether it is the general duty of care associated with a negligence claim or the heightened duty of care associated with a breach of fiduciary duty claim. Because the Plaintiff's Complaint entirely fails to establish any such affirmative obligation between himself, in his personal capacity, and First National, we cannot but find that each of his tort claims necessarily fails as a matter of law.

As the Plaintiff himself observes, a breach of fiduciary duty claim requires the plaintiff to establish some "special relationship" between himself and the defendant "which is one 'involving confidentiality, the repose of a special trust or fiduciary responsibilities." *Coplay Aggregates, Inc., v. Bayshore Soil Mgmg. LLC*, 2011 U.S. Dist. LEXIS 54830, *20-21 (E.D. Pa. May 23, 2011). Both negligence claims similarly oblige a plaintiff to show "a duty or obligation recognized by the law, requiring the defendant to conform to a certain standard of conduct for the

protection of the plaintiff against unreasonable risks." *Mack v. AAA Mid-Atlantic, Inc.*, 511 F. Supp. 2d 539, 546 (E.D. Pa. June 14, 2007) (quoting *Nw. Mutual Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005)). Both claims thus clearly require as a prerequisite to any finding of liability that the defendant undertook and/or owed some specific duty of care to the plaintiff, and the Plaintiff appears to agree with this fundamental requirement as a matter of law.

The Plaintiff here, however, has made no such allegation which either establishes or tends to establish that First National owed any duty *to him*. The Plaintiff's argument in his opposition papers is telling: the only "facts" which he alleges in support of each claim are that First National "owed a fiduciary duty *to Decedent* by virtue of the Power of Attorney held by" the bank and that First National "bore a legally recognized duty *to Decedent* to conform to an ethical standard of conduct and to effectuate Decedent's wishes pursuant to a power of attorney." (Doc. 12, pp. 13-14) (emphasis added). Thus, while it could certainly— and likely successfully—be argued that First National owed a duty of care to the Decedent as her Power of Attorney and financial planner, there is no factual allegation which establishes or tends to establish that the Defendant owed any duty

independent of that relationship *to the Plaintiff* in his individual capacity.[4] As such, the Plaintiff has failed to state a cognizable tort claim against the Defendant and his negligence, gross negligence, and breach of fiduciary duty claims must therefore be dismissed.

Apparently realizing the deficiencies in this argument, the Plaintiff broadly asserts that by operation of its general and fiduciary duties to the Decedent, First National necessarily and automatically owed a derivative duty of care to the Plaintiff as an heir of the Decedent. The Plaintiff, however, has entirely failed to direct the Court to any decisional law, binding or otherwise, which supports such a proposition, and our own research has independently revealed a dearth of authority supporting such a broad and measureless derivative negligence or breach of fiduciary duty claim. As above, both claims clearly require as a prerequisite to liability that the defendant owe some duty *to the plaintiff. See Coplay*, 2011 U.S. Dist. LEXIS 54830 at *20-21; *Mack*, 511 F. Supp. 2d at 546. Accordingly, for this additional reason, we will reject the Plaintiff's argument that any duty owed to the

---

[4] While we have previously concluded that the Plaintiff may not bring these tort claims in a representative capacity in federal court because the domicile of the Decedent destroys diversity jurisdiction, nothing in this decision shall be construed as precluding Plaintiff from bringing such negligence, gross negligence, or breach of fiduciary duty claims in state court in that capacity. Indeed, as we have above noted, the Plaintiff has apparently already brought exactly those claims in state court. While we express no opinion as to the likelihood of success of such claims, we are compelled to note, as a matter of caution, that our decision today by no means precludes that avenue of recovery to the Plaintiff.

16

Decedent was additionally owed to him, simply by virtue of his status as an heir, in his personal capacity. Finding no basis in the law for the Plaintiff's negligence, gross negligence, and breach of fiduciary duty claims in his individual capacity, we will grant First National's motion and dismiss Counts II, III, and IV against it with prejudice.[5]

### B.    Intentional Interference with Inheritance

We turn lastly to Plaintiff's final claim against First National which sounds individually in tort rather than contract or negligence and asserts that the bank, by "willfully and recklessly and/or negligently" failing to fund the Ross (2010) LLC, tortiously and willfully interfered with the Plaintiff's inheritance. In its motion for reconsideration, the bank asserts that Pennsylvania law recognizes such a claim only in extremely limited circumstances and has to date only extended this claim to interference with a last will and testament. As he did in responding to Rogers'

---

[5] The Plaintiff's claims would likewise fail under the third-party beneficiary theory announced in Section 302 of the Restatement (Second) of Contracts and adopted in Pennsylvania in *Guy*; indeed, the Plaintiff apparently concedes as much by asserting that he is not pursuing such a claim. As we observed at length in ruling on Defendant Rogers' motion, the Pennsylvania Supreme Court in *Guy* adopted Section 302 and concluded that in narrow circumstances, where a contractual relationship exists and the defendant was aware that the relationship was intended to benefit a third party, that third party may prevail on a breach of contract theory against the defendant. *Guy*, 459 A.2d at 751. Here, however, the Complaint is entirely devoid of any reference to a contractual relationship between the Decedent and First National which indicates that the Plaintiff is or was an intended beneficiary of that relationship. Accordingly, and because both parties agree that this legal theory is inapplicable on the facts before the Court, we will not further address this alternative theory.

motion for reconsideration, the Plaintiff acknowledges that this tort has not been extended beyond the context of interference with a will but urges the Court to find that the instant case is analogous to such circumstances and warrants an extension of the law. As we did in ruling on Defendant Rogers' motion, we again find no merit in the Plaintiff's argument.

In *Hollywood v. First National Bank of Palmerton*, 859 A.2d 472, 477 (Pa. Super. Ct. 2004), the Pennsylvania Superior Court adopted Restatement (Second) of Torts § 774B, pertaining to interference with inheritance claims, but has so far limited such claims to "instances involving demonstrable interference with the testamentary scheme enshrined in a decedent's will." *Id.* at 477. In *Hollywood*, the court held that to state a claim for wrongful interference with a will, a plaintiff must plead that: "(1) The testator indicated an intent to change his will to provide a described benefit for plaintiff, (2) The defendant used fraud, misrepresentation or undue influence to prevent execution of the intended will, (3) The defendant was successful in preventing the execution of a new will; and (4) But for the defendant's conduct, the testator would have changed his will." *Id.* at 477-78. The Plaintiff contends that the Court should extend *Hollywood* to the matter *sub judice* and asserts that each of these elements is plainly satisfied by the Complaint. We must disagree.

Even if this Court was inclined to extend the scope of *Hollywood* to include interference with revocable trust schemes, which we expressly decline to do, a review of the Plaintiff's Complaint reveals that at least one element of his claim has not been satisfied. Specifically, the record is entirely devoid of any fact or allegation which establishes that Fist National's actions were colored by fraud, misrepresentation, or undue influence. Indeed, beyond conclusory allegations that First National acted "willfully and recklessly and/or negligently," claims which we need not accept as true for purposes of ruling on a motion to dismiss, no fact or combination of facts in the Complaint, or reasonable inferences drawn therefrom, satisfy this critical element. Accordingly, we will also grant First National's motion to the extent it seeks dismissal of Count I.[6]

## V. CONCLUSION

For the reasons articulated herein, we will grant First National's motion for judgment on the pleadings or in the alternative for reconsideration *nunc pro tun* (doc. 116) in its entirety and dismiss Plaintiff's Complaint (doc. 1) with prejudice. While we are not without sympathy for the Plaintiff's situation and the unfortunate

---

[6] In addition to arguing the merits of the claim, Plaintiff asserts that the Court should not consider the tortious interference claim at this juncture at all because we previously implicitly denied First National's motion as to this claim. While it is true that we did not expressly open the door for First National to revisit its Rule 12(b)(6) arguments with regard to this claim, because we ultimately find that this sole remaining claim against it is entirely meritless, the interests of justice and conservation of resources compel us to nonetheless address the parties' arguments.

circumstances which apparently led to the Plaintiff's financial harm, it cannot be denied that the Plaintiff's claims as currently structured before this Court cannot survive as a matter of law. We emphasize, however, as we have noted above, that our analysis of the substantive merit of Plaintiff's claims applies only to the extent those claims are brought in the Plaintiff's individual capacity as a beneficiary of the Decedent's estate and reiterate that we express no opinion as to the merit of the Plaintiff's remaining state law claims, now proceeding in state court, which were brought in the Plaintiff's representative capacity. An appropriate order shall issue.